IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KEVIN & JOANNE GARDNER, \
*Individually and on Behalf of Others* \
*Similarly Situated,*

    Plaintiffs

v.      CIVIL NO. 1:10-cv-02781-JKB

MONTGOMERY COUNTY TEACHERS
FEDERAL CREDIT UNION,

    Defendant

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

### In Re: Defendant's Motion for Partial Summary Judgment (ECF No. 31)

Kevin and Joanne Gardner ("Plaintiffs") brought this putative class-action suit against the Montgomery County Teachers Federal Credit Union ("Defendant") alleging violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, and the Maryland Consumer Protection Act ("MCPA"), MD. CODE ANN., COM. LAW § 13-101, *et seq.* Defendant now moves for summary judgment with respect to Plaintiffs' claim under the MCPA. The issues have been briefed and no oral argument is required. Local Rule 105.6. For the reasons explained below, Defendant's Motion for Partial Summary Judgment (ECF No. 31) is GRANTED.

### I.    BACKGROUND

This case involves a dispute between a federally chartered credit union (Defendant) and two of its customers (Plaintiffs) over the legality of Defendant's practice of using funds from customers' checking and savings accounts to offset debt on their credit card accounts. Plaintiffs,

1

Mr. and Mrs. Gardner, are Maryland consumers who maintain checking (or "regular share"), and savings accounts with Defendant. Mr. Gardner also maintains a separate credit card with Defendant. On October 27, 2009, Defendant withdrew $49.16 from Plaintiffs' checking account and $95.84 from their savings account in order to satisfy an amount due on Mr. Gardner's credit card account. Plaintiffs allege that Defendant made these withdrawals without their authorization. They further allege that it is Defendant's general practice, referred to as the Delinquent Loan Transfer Program ("DLT Program"), to use software to automatically withdraw funds from customers' deposit accounts to satisfy delinquent credit card balances.

Plaintiffs acknowledge that Defendant requires all credit card applicants to open a deposit account and to sign an agreement containing the following provision:

> You grant us a security interest in all individual and joint share and/or deposit accounts you have with us now and in the future to secure your credit card account. When you are in default, you authorize us to apply the balance in these accounts to any amounts due.

(Am. Compl. 10, ECF No. 24). However, they contend that the U.S. Bankruptcy Court for the District of Maryland has found that this form agreement does not create a security interest in the signer's deposit account, and that Defendant's practice of withdrawing funds in this manner therefore violates the Truth in Lending Act, as implemented by the Federal Reserve Board in Regulation Z, 12 C.F.R. § 226.12(d). *See In Re: Philomena N. Okigbo*, Case No. 09-28296PM, 2009 WL 5227844 (Bankr. D. Md. Dec. 30, 2009). Plaintiffs further contend that the practice is an unfair or deceptive trade practice under the Maryland Consumer Protection Act.

On October 7, 2010, Plaintiffs filed a complaint in this Court alleging violations of the TILA and the MCPA and seeking declaratory and injunctive relief. (ECF No. 1). On June 7, 2011, they filed a motion to certify a plaintiff class consisting of "[a]ll persons who have had both a deposit account and credit card account with the Defendant in the three years preceding

2

the filing of this complaint." (ECF No. 14-1). The Court, however, held the motion in abeyance and deferred the issue of class certification until any dispositive pre-trial motions on the substance of Plaintiffs' claims had been resolved. Defendant has now moved for summary judgment with respect to Plaintiffs' MCPA claim only.

## II. STANDARD OF REVIEW

A party seeking summary judgment must show "that there is no genuine dispute as to any material fact" and that he is "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). If a party carries this burden, then the court will award summary judgment unless the opposing party can identify specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue for trial. FED. R. CIV. P. 56(e)(2). To carry these respective burdens, each party must support its assertions by citing specific evidence from the record. FED. R. CIV. P. 56(c)(1)(A). The court will assess the merits of the motion, and any responses, viewing all facts and reasonable inferences in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).

## III. ANALYSIS

Defendant argues that it is entitled to summary judgment with respect to Count II of Plaintiffs' Amended Complaint (ECF No. 24), which alleges a violation of the MCPA, on the grounds that Plaintiffs have failed to identify any provision of that statute that it has violated. The Court agrees.

It is clear that there is no genuine dispute between the parties as to any material fact with respect to Plaintiffs' MCPA claim.[1] The only facts that Plaintiffs raise in their opposition to

---

[1] Plaintiffs expressly identify the following as the "material facts in dispute related to [Defendant's] debt collection practices subject to the [Plaintiffs'] claim under the MCPA":

summary judgment (ECF No. 35) are that on October 27, 2009, Defendant took $147.00 from their deposit accounts and applied it to the delinquent balance on Mr. Gardner's credit card account. Defendant does not dispute this. (Compl. ¶¶ 12-13, ECF No. 1); (Ans. ¶¶ 12-13, ECF No. 3); (Am. Compl. ¶¶ 14-15); (Ans. to Am. Compl. ¶¶ 14-15). What is in dispute is whether Defendant's conduct constituted an unfair or deceptive trade practice under the MCPA. That is a question of law for the Court, not a jury, to decide.

Plaintiffs have failed to articulate any plausible legal theory by which Defendant's conduct violated the MCPA. Plaintiffs' entire case is based on its assertion that Defendant lacked a valid security interest in their deposit funds and that it was therefore prohibited from using those funds to offset their credit card debt by the TILA, as implemented in Regulation Z, 12 C.F.R. § 226.12(d).[2] They do not identify any specific provision of the MCPA that prohibits

---

1. As part of its debt collection practices concerning Plaintiff Kevin Gardner's VISA account, [Defendant] seized funds from the Plaintiffs without any consideration as to whether it had a lawful security agreement to do so. . . .

2. [Defendant] collected $147 from [Plaintiffs] through its [DLT] program for payment on their credit card. . . .

3. Defendant has no evidence to support it was authorized [sic] to collect $147 from [Plaintiffs]'s accounts. . . .

The first of these so-called "material facts in dispute" is not material at all, as Defendant's intent or state of mind is not relevant to the question of whether the DLT Program is an unfair or deceptive trade practice under the MCPA. The second "material fact in dispute" has actually never been in dispute in this case, as Defendant admitted it in its answers to Plaintiffs' original and amended complaints. (Compl. ¶¶ 12-13, ECF No. 1); (Ans. ¶¶ 12-13, ECF No. 3); (Am. Compl. ¶¶ 14-15); (Ans. to Am. Compl. ¶¶ 14-15). Finally, the third "material fact in dispute" is not a fact at all, but a legal conclusion, and, as discussed below, is immaterial since Defendant is under no obligation to prove that its conduct was lawful.

[2] (d) Offsets by card issuer prohibited.

(1) A card issuer may not take any action, either before or after termination of credit card privileges, to offset a cardholder's indebtedness arising from a consumer credit transaction under the relevant credit card plan against funds of the cardholder held on deposit with the card issuer.

(2) This paragraph does not alter or affect the right of a card issuer acting under state or federal law to do any of the following with regard to funds of a cardholder held on deposit with the card issuer if the same procedure is constitutionally available to creditors generally: Obtain or enforce a consensual security interest in the funds; attach or otherwise levy upon the funds; or obtain or enforce a court order relating to the funds.

4

such an offset, but argue that any violation of the TILA is a *per se* violation of the MCPA because: (1) the MCPA incorporates the Federal Trade Commission Act ("FTCA") by reference and the FTCA incorporates the TILA; and (2) the MCPA is a broad remedial act that should be construed liberally to effectuate its purpose of protecting consumers. The Court rejects these arguments.

Plaintiffs have offered no authority, and the Court is aware of none, for the position that a violation of the TILA is a *per se* violation of the MCPA. The MCPA in fact contains a list of statutes, the violation of which *does* constitute a *per se* unfair or deceptive trade practice, and the TILA is not on it. MD. CODE. ANN., COM. LAW § 13-301(14); *see also In re Pittman*, 165 B.R. 586, 589 (Bankr. D. Md. 1994) (observing that the MCPA does not identify TILA violation as *per se* unfair or deceptive trade practice). It also contains a list of prohibited trade practices that it deems unfair or deceptive, and none of them deal explicitly with offsets of consumer debt by lenders. § 13-301. Most tellingly of all, Subtitle 7 of Title 15 of the Maryland Commercial Law, which the MCPA also does not incorporate, deals specifically with offsets by lenders of consumer credit, and is substantially identical to Regulation Z.[3] The fact that the MCPA incorporates numerous consumer credit provisions from Title 14 of the Commercial Law but does not incorporate the offset provision of Title 15 compels the conclusion that an unauthorized offset of consumer debt by a lender is not, by itself, actionable under the MCPA.

Plaintiffs' arguments to the contrary are unpersuasive. Their first argument, which they make more by way of implication than express statement, is that the MCPA somehow

---

(3) This paragraph does not prohibit a plan, if authorized in writing by the cardholder, under which the card issuer may periodically deduct all or part of the cardholder's credit card debt from a deposit account held with the card issuer (subject to the limitations in § 226.13(d)(1)).

[3] "For the purposes of this article, a bank or financial institution may not offset any property in its possession or money from a customer's savings or checking account for the settlement of a delinquent consumer debt unless: (1) The offset is authorized in writing by the customer; . . ." MD. CODE ANN., COM. LAW § 15-702.

5

incorporates the FTCA and the FTCA incorporates the TILA. The only authority Plaintiffs offer for incorporating the FTCA into the MCPA is § 13-105 of the MCPA, which provides that "It is the intent of the General Assembly that in construing the term 'unfair or deceptive trade practices', due consideration and weight be given to the interpretations of § 5(a)(1) of the Federal Trade Commission Act by the Federal Trade Commission and the federal courts." Plaintiffs then cite a number of cases in which the FTC found that the violation of a particular provision of the TILA was an unfair or deceptive trade practice under the FTCA. None of this supports Plaintiffs' sweeping theory that any TILA violation is a *per se* MCPA violation. The Maryland General Assembly's admonishment to courts to give weight to the FTC's interpretation of "unfair or deceptive trade practice" obviously does not mean that anything the FTC decides is an unfair or deceptive practice automatically becomes an MCPA violation. Even if it did, Plaintiff's claim would still fail because they have not cited any decision in which the FTC held that a violation of Regulation Z's offset provision was an unfair or deceptive trade practice. The fact that the FTC has found violations of other TILA provisions to be unfair or deceptive practices is irrelevant. Similarly unavailing is Plaintiffs' appeal to the remedial nature of the MCPA and its provision that its terms should be "construed and applied liberally to promote its purpose." § 13-305. That point is immaterial because Plaintiffs have not supplied any provision for the Court to construe, liberally or otherwise.

Furthermore, even if the Court were convinced that a violation of Regulation Z's offset provisions was an unfair or deceptive trade practice under the MCPA, Plaintiffs still could not prevail because they have adduced no evidence in their response showing that Defendant actually violated those provisions. Defendant does not dispute that it took Plaintiffs' deposit funds to offset their credit card debt, but to prove that this conduct violated Regulation Z,

6

Plaintiffs still must demonstrate that Defendant lacked a valid security interest in the deposit funds. They have not done so. The only evidence they offer to show that Defendant lacked a security interest in the funds consists of: (1) their own interrogatory answers, which are not evidence of anything with respect to Defendant's liability; and (2) the deposition testimony of Defendant's collection manager, explaining that the DLT Program works by "sweeping" funds from customers' deposit accounts to satisfy delinquent balances on their credit card accounts. (Pls.' Resp. at 3, ECF No. 35). None of this is probative of whether Defendant had a security interest in Plaintiffs' deposit funds. Plaintiffs also allude repeatedly to the decision of the District of Maryland Bankruptcy Court in the *Okigbo* case, holding that the credit card application signed by the debtor in that case did not give Defendant a security interest in his deposit funds. This does nothing for Plaintiffs' case, however, because they have offered no evidence that they signed the same or even a similar application. Indeed, they offer no evidence concerning their contractual agreements with Defendant at all.

The Court infers from Plaintiffs' response that their failure to adduce any evidence to support their claims is a result of their errant belief that it was Defendant who bore the burden of presenting evidence that its DLT Program "was legal" and that it had authorization to offset Plaintiffs' credit debt with their deposit funds. *See* (Pl.'s Resp. 3, 5, ECF No. 35). Plaintiffs apparently misunderstand the summary judgment procedure. Defendant was not obligated to offer evidence of anything. Summary judgment, among other things, affords defendants in civil cases an opportunity to test the sufficiency of a *plaintiff's* evidence before going to trial. *See Cloaninger v. McDevitt*, 555 F.3d 324, 331 (4th Cir. 2009) (defendants may "contest on a motion for summary judgment the adequacy of the plaintiff's evidence to support the allegations in his complaint."). A defendant's burden in moving for summary judgment is to show that: (1) there

is no dispute of material fact; and (2) as a matter of law, the evidence on record does not prove that the defendant is liable. FED. R. CIV. P. 56(c). As explained above, the Defendant has done both with respect to Plaintiffs' MCPA claim, and they are therefore entitled to summary judgment.

Moreover, the Court is troubled by the fact that Plaintiffs have failed to adduce any evidence in support of their claim that Defendant violated Regulation Z's offset provision, as this is the basis of their entire case, not only their MCPA claim. If the evidence that Plaintiffs have presented in their response to the instant motion is all that they have, then Defendant would be entitled to summary judgment on all of Plaintiffs' remaining claims. Therefore, in order to insure that a triable issue of fact exists in this case before proceeding any further, the Court will direct Defendant to file a motion for summary judgment with respect to the remaining three counts in Plaintiffs' amended complaint.

## IV. CONCLUSION

Accordingly, and order shall issue GRANTING Defendant's Motion for Partial Summary Judgment (ECF No. 31) and DIRECTING Defendant to file an additional motion for summary judgment with respect to all remaining claims in this case.

Dated this 29th day of February, 2012

BY THE COURT:

_____
James K. Bredar
United States District Judge